IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JIMMY KIMBRIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:10cv1096-TFM |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

## I. Introduction

Plaintiff Jimmy Kimbril ("Kimbril") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., alleging that he is unable to work because of a disability.  His application was denied at the initial administrative level. Kimbril then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined by the Social Security Act.  The ALJ, therefore, denied the plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge.  The case is now before the court for review pursuant to 42 U.S.C. § 405(g)

and § 1631(c)(3).  Based on the court's review of the record in this case and the parties'

briefs, the court concludes that the Commissioner's decision is due to be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of
> not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments
> set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. Administrative Proceedings

Kimbril was 54 years old at the time of the hearing and has a high school equivalency diploma. (R. 327, 332.) Kimbril has prior work experience as a logger, electrician, construction worker, and landscape worker. (R. 34-36, 50.) Kimbril alleges that he became disabled on March 31, 2008, from back and knee pain, carpal tunnel syndrome, heel spurs, arthritis, sinus infections, and high blood pressure. (R. 36-38, 41-43.) After the hearing, the ALJ found that Kimbril suffers from severe impairments of traumatic arthritis of the left knee, chronic back pain, history of carpal tunnel syndrome, and sinusitis produce limitations and

non-severe impairments of mixed hyperlipidemia and hypertension, lacrimal duct stenosis, and bi-lateral foot problems.  (R. 16-17.)  The ALJ also found that Kimbril is unable to perform his past relevant work, but that he retains the residual functional capacity to perform less than the full range of light work.  (R. 18.)  Specifically, the ALJ determined that Kimbril must alternate between sitting and standing; can rarely operate foot controls with his left leg, climb stairs or ramps, bend stoop, kneel, crouch, or crawl; cannot climb ladders, scaffolds, or ropes; and cannot work around unprotected heights or dangerous equipment.  (R. 18.)  Testimony from the vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Kimbril could perform, including work as a parking lot attendant, mail clerk, and information clerk.  (R. 23.)

## IV.  Discussion

Kimbril contends that the ALJ improperly applied the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2 ("Grids") because Rule 201.14 establishes that he is disabled.  According to Kimbril, the ALJ improperly concluded that he could perform light work when, under the Guidelines, his exertional limitations establish he can perform no more than sedentary work.

Exclusive reliance on the grids is appropriate only when a claimant has no non-exertional impairments that significantly limit his basic work activities.  *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995); *Sryock v. Heckler*, 764 F.2d 834 (11th Cir. 1985).

> [I]n determining residual functional capacity only exertional  limitations are considered . . . If a claimant has nonexertional impairments that significantly limit the ability to do basic work activities . . . then the grid regulations do not apply. . . . However, when both exertional and nonexertional work impairments

4

exist the grids may still be applicable.  [N]on–exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at a designated level.  Therefore, when both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.  Courts will review this determination only to determine whether it is supported by substantial evidence.

*Sryock*, 764 F.2d at 836 (internal citations omitted).

The crux of Kimbril's argument concerns the ALJ's determination that he is able to perform light work and her "presump[tion] that he could stand and walk for 6 hours out of an 8 hour day or that he could use leg controls frequently" with his impairments, which include a "severe problem with his left knee . . . status post two surgeries and . . . a limp and . . . use[] [of] a cane," as well as heel spurs and arthritic feet.  (Pl. Br. 9.)  First, the court notes that, contrary to Kimbril's assertion, the ALJ did not find that Kimbril is able to perform the full range of light exertional work.  The ALJ specifically found that Kimbril "had the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b)."  (R. 18.)  The ALJ also did not find that Kimbril is able to stand and walk for six hours of an eight-hour workday.  Rather, the ALJ found that Kimbril requires the ability to alternate between sitting and standing while working and accounted for his left knee problems by limiting him to rarely operating foot controls with his left leg.  (R. 18, 51.)

The Social Security Administration has developed a sequential evaluation process to determine if a plaintiff is disabled.  20 C.F.R. §§ 404.1520 and 416.920.  It is the plaintiff's responsibility to demonstrate an inability to return to his past relevant work.  *Lucas, supra.* After a plaintiff has shown that he cannot perform his past relevant work, the burden then falls

upon the Commissioner to show that there are other jobs in the national economy that the plaintiff can perform. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

The ALJ determined by expert vocational testimony that there are other light jobs that Kimbril could perform in the national economy within the sit/stand limitation and other restrictions of his impairments. (R. 23.) During the hearing, the following exchange between the ALJ and vocational expert occurred:

Q:    And I'd like you to assume that I have an individual with the same work history as you already described for Mr. Kimbril and assume further I find the individual is limited in the following fashion, lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently with the need to alternate between sitting and standing, rarely operating foot controls with the left leg, rarely climbing stairs or ramps, never climbing ladders, scaffolds or ropes, rarely bending, stooping kneeling, crouching or crawling and no work around unprotected heights and dangerous equipment. Now, with these limitations, in your opinion, could such an individual perform any of the work that Mr. Kimbril has performed in the past?

A:    No past work, Your Honor.

Q:    And in your opinion, are there any jobs in the region or several regions in the country that an individual with the same work as a younger – an individual closely approaching advanced age and has a high school education could perform?

A:    Your honor, there would be unskilled and it would be a limited number of jobs starting with parking lot attendant. The DOT code is 91547310. This is light work. It's unskilled with an SVP of 2. Nationally jobs would exceed 600,000. I would include mail clerk. The DOT code is 209687026. This is light work. It's unskilled with an SVP of 2. Nationally jobs it would exceed 900,000. I would include surveillance system monitor. DOT code is 379367010. This is sedentary work. It's unskilled with an SVP of 2. Nationally jobs would exceed 700,000.

6

Q:     And do you have another light work job that would be identifiable?

A:     Your honor, I would include information clerk.  DOT code is 237367018.  This is light work.  It's unskilled with an SVP of 2. Nationally jobs would exceed 900,000.

(R. 51-52.)

The ALJ further inquired as follows:

Q:     Now, I in my hypothetical did pose this sit/stand option and I from personal knowledge know that the DOT does not identify sit/stand options within its category of exertional limitations. But is your testimony on this matter different that what the DOT identifies with these jobs?

A:     Your Honor, I have 30 years experience doing job placement and vocational assessments.   Some of it is based on personal knowledge and experience with these jobs.

Q:     Is your testimony on these matters consistent with the description of these jobs in the DOT?

A:     Yes, ma'am.

Q:     So it's based on your knowledge as well as the description in the DOT?

A:     That's correct.

(R. 52-53.)  Thus, the ALJ met her responsibility regarding the option of sitting or standing and other physical limitations while performing these light work jobs.  *See Jones*, *supra*.

The ALJ's finding that Kimbril is able to lift twenty-five pounds is also based on Kimbril's own reports to the Social Security Administration.  For example, in both a Social Security Administration Function Report and Adult Disability Report, Kimbril indicates that he is able to lift no more than 25 pounds.  (R. 154, 166.)   Thus, the ALJ's determination that

7

Kimbril has the residual functional capacity to lift no more than twenty-five pounds is supported by substantial evidence.

In addition, the ALJ assigned great weight to Kimbril's treating physician, Dr. Michael L. Granberry, when determining Kimbril has the residual functional capacity to perform light work. Specifically, the ALJ determined:

> . . . I find the claimant's back and left knee pain precludes him from lifting and carrying more than 20 pounds occasionally and 10 pounds frequently and from climbing ladders, scaffolds or ropes. The claimant's back and left knee pain limits him to rarely climbing stairs or ramps, bending, stooping, kneeling, crouching, or crawling. Due to his knee pain, the claimant can rarely operate foot controls with his left leg.
>
> In so finding, I accorded the opinion of Dr. Granberry great weight. In an office note dated July 8, 2008 and a "Worker's Compensation Assessment" dated October 22, 2009, Dr. Granberry restricted the claimant to no kneeling, squatting, crawling, climbing or lifting weights over 25 pounds. (Exhibits 2F and 5F). These restrictions are consistent with the claimant's allegations. Dr. Granberry is an orthopaedic surgeon. (Exhibit 4F). He has treated the claimant since April 14, 2008. (Exhibit 2F). His opinion is not inconsistent with the residual functional capacity described above. However, restricting the claimant to "never" performing postural activities would effectively limit him to a static position; therefore, the claimant has been limited to "rarely" performing such activities.[4]

(R. 21.) This court's review of the medical record indicates that the ALJ's findings concerning Kimbril's limitations are consistent with Dr. Granberry's opinion. After conducting an examination of Kimbril on July 9, 2008, Dr. Granberry recommended that Kimbril "continue his current restrictions of 25 pound lifting [and] no kneeling, crawling or

---

[4] The ALJ also found that Dr. Granberry's conclusory statement that Kimbril "still has enough back and knee issues that he has been unable to be employed" is an issue reserved to the Commissioner of Social Security. A statement by a medical source that a claimant is "disabled" or "unable to work" is an issue reserved to the Commissioner and is not entitled to any special significance. See 20 C.F.R. §§ 404.1527(e)(1); SSR 96-5p, 1996 WL 374183, at *2.

climbing or squatting." (R. 232.) In a Worker's Compensation Assessment dated October 22, 2009, Dr. Granberry recommended light duty work status with no kneeling, squatting, crawling, climbing, or lifting over twenty-five pounds. (R. 275.) Consequently, the ALJ's reliance on Dr. Granberry's opinion regarding Kimbril's work restrictions is supported by substantial evidence.

The ALJ also considered the plaintiff's daily activities when determining his residual functional capacity to perform work. Specifically, the ALJ relied on medical records indicating the plaintiff engaged in mild exercise on a daily basis. The record indicates that Kimbril was able to perform light exercise. For example, during a doctor's visit at the Veterans Administration Central Alabama Health Care Center on July 31, 2009, Kimbril reported that he "exercises mildly each day." (R. 297.) On several occasions between January 2009 and January 2010, medical personnel noted that Kimbril is able to perform mild exercise or counseled him regarding diet and exercise. (R. 285, 295, 297, 299, 283, 296, 306, 309.) The court therefore concludes that the ALJ's finding that Kimbril is able to perform mild exercise as a daily activity is supported by substantial evidence.

Based on the foregoing, the court concludes that the ALJ's determination that, based on Kimbril's age, education, work experience, and residual functional capacity for light work, with restrictions which include the alternating of sitting and standing; rarely operating foot controls with his left leg, climbing stairs or ramps, bending, stooping, kneeling, crouching, or crawling and never climbing ladders, scaffolds, or ropes or working around unprotected heights or dangerous equipment, there are jobs that exist in significant numbers in the national

economy that he can perform is supported by substantial evidence.  This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards.  *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## VI.  Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate final judgment will be entered.

DONE this 2nd day of February, 2012.


/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

10